IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORI BOND,                                                      Case No. 3:20-cv-01943-SB

                            Plaintiff,                          **FINDINGS AND**
                                                                **RECOMMENDATION**
              v.

SHRINERS HOSPITAL FOR CHILDREN,

                            Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Lori Bond ("Bond") filed this action against defendant Shriners Hospital for

Children ("Shriners"), alleging claims for age discrimination and whistleblower retaliation under

OR. REV. STAT. ("O.R.S.") §§ 659A.030 and 659A.199. (ECF No. 6, Ex. 1.) Pending before the

Court is Bond's motion to remand, or in the alternative, to amend her complaint (ECF No. 6),

and Shriners' motion to dismiss (ECF No. 4). For the reasons explained below, the Court

recommends that the district judge deny Bond's motions to remand and to amend, and grant

Shriners' motion to dismiss.

///

///

PAGE 1 – FINDINGS AND RECOMMENDATION

# BACKGROUND[1]

## I.    BOND'S COMPLAINT

Bond filed this action in the Multnomah County Circuit Court ("state court") on October 1, 2020, alleging claims for age discrimination and whistleblower retaliation under O.R.S. §§ 659A.030 and 659A.199, after Shriners terminated her employment on June 12, 2019. (Compl. ¶ 27.)

## II.    PROCEDURAL HISTORY

After filing her case in state court on October 1, 2020, Bond served Shriners with the summons and complaint on October 9, 2020. (Pl.'s Mot. to Remand Ex. B-1.) On November 9, 2020, at 4:43 p.m., Shriners timely filed a Notice of Removal in this court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). (Notice of Removal, ECF No. 1.) This court sent an automatic Electronic Case Filing ("ECF") notice to all counsel of record at the time of filing (4:43 p.m.), notifying the parties that Shriners had filed the Notice of Removal. (Decl. of Amanda Bryan ("Bryan Decl.") Ex. 1.) Fifty minutes later, at 5:33 p.m., Bond's counsel attempted to file an amended complaint ("FAC") in state court, adding Robert Bernstein, M.D. ("Bernstein"), as a defendant. (Bryan Decl. Ex. 2; Pl.'s Mot. to Remand Ex. B-2.) However, the state court rejected Bond's filing because counsel entered the newly named defendant incorrectly into the electronic filing system. (Bryan Decl. Ex. 3.)

---

[1] The Court accepts the complaint's well-pleaded factual allegations as true and construes all inferences in favor of Bond. *See Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017). In resolving Bond's motion to remand, the Court may consider the allegations in Bond's complaint, as well as extrinsic evidence. *See Viramontes v. FCA US LLC*, No. 20-2046, 2020 WL 2318203, at *2 (C.D. Cal. May 11, 2020) ("[I]n the context of a motion to remand due to lack of diversity jurisdiction, it is 'well established that courts may pierce the pleadings . . . and examine evidence,' [and] . . . ought to construe facts in favor of the plaintiff where there is disputed evidence.'") (citation omitted).

Just a few minutes later, at 5:41 p.m., Shriners filed a Notice of Filing of Removal in state court ("Notice of Filing") (Bryan Decl. Ex. 5), and e-mailed a copy of both the Notice of Removal and the Notice of Filing to Bond's counsel at 5:46 p.m. (Bryan Decl. Ex. 6.) At 6:02 p.m., Bond's counsel e-mailed Shriners' counsel, stating that he "just received notification from Pacer that [counsel] filed a Notice of Removal" and that "[a]s a professional courtesy, I am attaching an Amended Complaint that was filed today as well that I think will destroy the diversity argument and anticipate that we will be remaining in Multnomah County." (Bryan Decl. Ex. 4.) The e-mail noted that Bond's counsel "never received . . . a Notice of Removal or anything that was filed in either court," and that he was "surprised" that Shriners' counsel had not conferred with Bond's counsel before filing the Notice of Removal in federal court. (*Id.*)

On November 10, 2020, Shriners mailed by first class mail to Bond's counsel its Notice of Removal and Notice of Filing. (Pl.'s Mot. to Remand Ex. B-4.) That same day, Bond's counsel refiled the rejected FAC and cured the electronic filing defect per Oregon's electronic filing procedures. Bond's counsel also filed a letter with the state court clerk, requesting that the filing relate back to the original time of filing, which the court granted. (Bryan Decl. Ex. 3.)

On November 11, 2020, Bernstein was served at his place of employment. (Pl.'s Mot. to Remand Ex. B-5.) On November 13, 2020, Bond's counsel received the first class mailing from Shriners of its Notice of Removal and Notice of Filing. (Decl. of Nicholas Yanchar ("Yanchar Decl.") ¶ 4.) The chronology of these events is documented in the following timeline:

| Event | Venue | Time Stamp | Date Stamp |
|---|---|---|---|
| Shriners files Notice of Removal | Federal Court | 4:43 p.m. | November 9, 2020 |
| Court sends ECF Notice to Bond's and Shriners' counsel | Federal Court | 4:43 p.m. | November 9, 2020 |

| Event | Venue | Time Stamp | Date Stamp |
|---|---|---|---|
| Bond attempts to file FAC | State Court | 5:33 p.m. | November 9, 2020 |
| Court rejects FAC | State Court | After 5:33 p.m. | November 9, 2020 |
| Shriners files Notice of Filing | State Court | 5:40 p.m. | November 9, 2020 |
| Shriners emails Notice of Removal and Notice of Filing to Bond's counsel | | 5:46 p.m. | November 9, 2020 |
| Bond's counsel acknowledges receipt of ECF notice | | 6:02 p.m. | November 9, 2020 |
| Bond refiles FAC, requesting relation-back, which state court approves | State Court | | November 10, 2020 |
| Bernstein served with summons and complaint | | | November 10, 2020 |
| Bond's counsel receives mailed copies of Notices | | | November 13, 2020 |

On November 16, 2020, Shriners filed a motion to dismiss this action. (Def.'s Mot. at 1, ECF No. 4.) On November 23, 2020, Bond filed a motion to remand, arguing that she properly added Bernstein, a diversity-destroying defendant and citizen of the forum state, as a defendant prior to removal, and therefore this court lacks diversity jurisdiction under 28 U.S.C. § 1441(b).[2] (Pl.'s Mot. to Remand at 4-9.) Alternatively, Bond requests leave to amend her complaint in federal court to add Bernstein as a defendant. (Id. at 2.)

///

///

---

[2] 28 U.S.C. § 1441(b) provides: "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

**LEGAL STANDARDS**

## I.    REMOVAL AND REMAND

"A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). However, "'it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (brackets omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Id.* (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). This "'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the [district] court resolves all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 1042 (quoting *Gaus*, 980 F.2d at 566). Accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

## II.    MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Mashiri*, 845 F.3d at 988 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    MOTION TO REMAND

Bond moves to remand pursuant to 28 U.S.C. § 1441(b), on the ground that this court lacks diversity jurisdiction because Bond filed her FAC in state court before removal was complete, which destroyed diversity jurisdiction. (Pl.'s Mot. to Remand at 4-6.) Shriners responds that jurisdiction vested with this court at the time it filed the Notice of Removal, and that Bond's later filing of a FAC did not destroy this Court's diversity jurisdiction. (Def.'s Resp. in Opp'n to Pl.'s Mot. to Remand ("Def.'s Opp'n") at 5-7.) For the reasons explained below, the Court recommends that the district judge deny Bond's motion to remand.

"[R]emoval is effected by the defendant taking three procedural steps: filing a notice of removal in the federal court, filing a copy of this notice in the state court, and giving prompt written notice to all adverse parties." *Miller v. Aqua Glass, Inc.*, No. CIV. 07-3088-CL, 2008 WL 2854125, at *1 (D. Or. July 21, 2008), *adhered to on reconsideration*, No. CIV. 07-3088-CL, 2008 WL 3411657 (D. Or. Aug. 11, 2008) (citation omitted); *see also* 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.").

The threshold dispute here is whether the Court should evaluate diversity jurisdiction at the time Shriners filed its Notice of Removal in federal court, or after it completed all three

procedural steps to effect removal. The Court assumes without deciding that it must evaluate

diversity jurisdiction after Shriners satisfied the third procedural step. *See* 14C Charles Alan

Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3736 (rev. 4th ed.) ("[T]he sounder rule,

and the one most consistent with the language of Section 1446(d) of Title 28, is that removal is

not effective until the defendant has taken all the steps required by the federal statute."); *see also*

*Moniz v. Lujan*, Civil No. 14-00465 DKW-RLP, 2015 WL 3965915, at *3 (D. Haw. June 29,

2015) ("The Ninth Circuit has not directly addressed whether the federal court obtains

jurisdiction immediately upon the filing of the Notice of Removal with the clerk of the federal

court, or only after all three procedural steps to effecting removal are completed."). When

Shriners completed the third and final removal step here, Bond had not yet properly filed her

FAC adding Bernstein as a defendant, and therefore diversity jurisdiction still existed at the time

Shriners effected removal.

Several courts have concluded that when a plaintiff files an amended complaint before

the state court receives notice of removal, the amended complaint is the operative complaint.

*See, e.g.*, *Anthony v. Runyun*, 76 F.3d 210, 213-14 (8th Cir. 1996) ("Because the [plaintiffs] filed

their amended complaint the day before the notice of removal was filed [in state court], they

argue that the district court was bound to consider it. We agree."); *Jacquin v. Nestle Purina*

*Petcare Co.*, No. 4:20-cv-00467-SNLJ, 2020 WL 3489347, at *2 (E.D. Mo. June 26, 2020)

("Plaintiffs filed their amended petition before the notice of removal was filed in state court.

Hence the amended petition controls."); *Willich v. Wells Fargo Bank, N.A.*, No. 3:12-cv-544-J-

32 JBT, 2012 WL 13098510, at *4 (M.D. Fla. Aug. 13, 2012) (holding that "because [the

plaintiff] filed the Amended Complaint in state court prior to the State Notice, the state court

retained jurisdiction to accept the Amended Complaint"); *Thomas v. North Carolina*, No.

1:10CV226, 2010 WL 2176075, at *4 (M.D.N.C. May 21, 2010) ("[B]ecause Plaintiff filed her Amended Complaint before the state court received the State Notice, the amendment occurred before, not after, removal."); *Luri v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:09-CV-1664, 2010 WL 1254282, at *3 (N.D. Ohio Mar. 24, 2010) ("[W]hen [plaintiff] filed his amended pleading at 1:35 p.m., he destroyed diversity among the parties."). This authority, however, does not address the specific issue before the Court, i.e., whether diversity is destroyed when a plaintiff *attempts* to amend the complaint prior to the third removal step but the state court rejects the electronic filing and only later relates the resubmission back to the time of the original submission. That question requires an examination of Oregon's electronic filing ("e-filing") rules.

In Oregon courts, e-filing "requires the filer to enter some data that a court clerk might otherwise enter for a document filed in paper form." *Otnes v. PCC Structurals, Inc.*, 299 Or. App. 296, 301 (2019). Oregon courts have recognized that "[w]ith a filer's entry of that added data comes the risk that the filer may make clerical mistakes, entering erroneous data that unwittingly prevents filing." *Id.* These mistakes may include entering "the wrong case type, the wrong filing code, the wrong court location, or the wrong responsible party." *Id.*; *see also* OREGON JUD. DEP'T, *Policy and Standards for Acceptance of Electronic Filings in the Oregon Circuit Courts, Version 1.0*, at 2 (May 22, 2015), available at

https://www.courts.oregon.gov/services/online/Documents/eFile/OJD-Policy-and-Standards-for-Acceptance-of-Electronic-Filings-in-the-Oregon-Circuit-Courts.pdf (last visited March 1, 2021) ("Electronic Filing Acceptance Standards").

To address the problem of filing errors, Oregon Uniform Trial Court Rule ("UTCR") 21.080 provides that, "if the court rejects a document submitted electronically for filing, the

electronic filing system will send an email to the filer that explains why the court rejected the document[.]" UTCR 21.080(5). Under Oregon's electronic filing policy, "[e]lectronic filings returned ('rejected') through the [Oregon Judicial Department's] eFiling system are not considered filed with the court." *Electronic Filing Acceptance Standards*, at 2. To effectuate filing of a rejected submission, "[a]n efiler must correctly resubmit the electronic filing to the circuit court and have it accepted by the court, in order to be considered successfully filed." *Id.* UTCR 21.080(5)(a) governs the procedure for correcting clerical errors with electronically filed pleadings, and provides that:

> A filer who resubmits a document within 3 days of the date of rejection under this section may request, as part of the resubmission, that the date of filing of the resubmitted document relate back to the date of submission of the original document to meet filing requirements.

UTCR 21.080(5)(a). The rule states that the filer must include a cover letter that sets out the reason that would justify relation back to the original submission. *Id.* The rule also provides that a responding party may object to the request to allow relation back to cure a failed filing. UTCR 21.085(5)(b). The Oregon Court of Appeals has concluded that, "[g]iven the two provisions allowing a filer to request relation back and an opponent to object to that request, UTCR 21.080(5) necessarily gives the trial court discretion to allow or disallow relation back to cure a failed filing," and therefore "[r]elation back is not a matter of right simply because a document is resubmitted, this time properly." *Otnes*, 299 Or. App. at 302. Rather, "the rule gives the trial court discretion to consider the nature of the reason for rejection, the reasonableness of an excuse offered, and the type of document." *Id.* at 303.

With these state court e-filing rules in mind, the Court finds that the operative complaint at the time of removal was Bond's original complaint, not her amended complaint. Removal requires three steps: (1) filing a Notice of Removal in federal court; (2) filing a Notice of Filing

in the state court; and (3) and giving prompt written notice to all adverse parties. *See Aqua Glass*, 2008 WL 2854125, at *1 (identifying the three requirements). Shriners filed the Notice of Removal in federal court at 4:43 p.m. on November 9, 2020, filed the Notice of Filing in state court at 5:40 p.m. that same day, and provided written notice of removal to Bond's counsel via e-mail at 5:46 p.m., thereby effecting removal as of 5:46 p.m. on November 9, 2020.[3]

Although Bond first attempted to file her amended complaint at 5:33 p.m., the court rejected the filing. *See Otnes*, 299 Or. App. at 303 (noting that the plaintiff's first attempt at e-filing a motion was rejected, and therefore the plaintiff "failed to achieve filing" on the filing deadline). Bond did not attempt to cure the defect until the following day. (Bryan Decl. Ex. 3.) Under Oregon's electronic filing procedures, the state court did not accept nor file Bond's FAC until November 10, 2020, the day after Shriners perfected removal.[4] By that time, Shriners' removal had already divested the state court of its jurisdiction over the case, and therefore the

---

[3] Bond argues that notice by email does not satisfy the requirement of "written notice" in 28 U.S.C. § 1446(d), because the email did not comply with electronic service rules, and therefore Shriners did not provide "written notice" until Bond's counsel received the removal documents in the mail on November 13, 2020. (Pl.'s Mot. to Remand at 6.) Contrary to Bond's assertions, the plain language of the statute does not require formal service of the Notice of Removal, but requires only that defendants "give written notice" to adverse parties. 28 U.S.C. § 1446(d); *see Rigsby v. Arizona*, No. CV 11-1696-PHX-DGC (ECV), 2012 WL 273703, at *3 (D. Ariz. Jan. 31, 2012) ("Section 1446(d) does not require service of the Notice of Removal, it simply requires that a defendant give written notice that the Notice of Removal has been filed."); *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1202 (S.D. Cal. 2009) ("Section 1446(d) does not require 'formal' or 'personal' service of a notice of removal upon a plaintiff; it merely requires 'written notice.'"); *see also Titan Finishes Corp. v. Spectrum Sales Grp.*, 452 F. Supp. 2d 692, 695-96 (E.D. Mich. Aug. 14, 2006) (holding that the defendant satisfied 28 U.S.C. § 1446(d) by "sen[ding] Plaintiff's counsel an email and voice mail messages notifying Plaintiff of Defendants' removal").

[4] Bond argues that Shriner's removal was also deficient because Shriners was required to obtain Bernstein's consent prior to removal pursuant to 28 U.S.C. § 1446(b)(2)(A) (requiring that "all defendants who have been properly joined and served must join in or consent to the removal of the action"), but Bond had not properly joined or served Bernstein at the time Shriners effected removal, and therefore his consent was not required.

state court did not have jurisdiction to consider whether to accept Bond's post-removal

resubmission of the FAC, nor did the state court have jurisdiction to grant Bond's relation back

request. *See Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696,

700 (2020) (holding that following removal, "the state court loses all jurisdiction over the case,

and, being without jurisdiction, its subsequent proceedings and judgment are not simply

erroneous, but absolutely void" and "every order thereafter made in that court is *coram non*

*judice*, meaning 'not before a judge'") (simplified); *Holmes v. AC & S, Inc.*, 388 F. Supp. 2d

663, 667 (E.D. Va. 2004) (noting that once the Notice of Removal is filed in both courts, the

state court is divested of its jurisdiction and "the federal court takes the case in the posture in

which it departed the state court"); *see also Mansaray v. Mut. Benefit Ins. Co.*, No. PX 17-0098,

2017 WL 2778824, at *4 (D. Md. June 26, 2017) (holding that "the operative complaint at the

time of removal was the original and not the proposed amended complaint" because the

"[p]laintiff's motion to amend was never accepted in [state] court prior to removal, and so cannot

be considered in the diversity analysis").[5]

For these reasons, Bond's original complaint was the operative complaint at the time of

removal, diversity jurisdiction existed at the time of removal, and the district judge should deny

Bond's motion to remand.

///

---

[5] Bond argues that the court's decision in *Miller v. Fry's Elecs., Inc.*, No. 08-541-HA, 2008 WL 4186905 (D. Or. Sept. 5, 2008), requires remand here. (Pl.'s Mot. to Remand at 5.) In *Miller*, the plaintiff filed his amended complaint one hour before the defendant filed his Notice of Removal in federal court. *See Miller*, 2008 WL 4186905, at *1. The Court held that "defendant's Notice of Removal, having been filed one hour after plaintiff's FAC was filed, was plainly timely as to the amended complaint," and thus remand was appropriate. *Id.* at *2. In contrast here, Bond did not properly file her FAC until after Shriners had already completed the removal process.

## II.    MOTION TO DISMISS

Having determined that remand is not warranted, the Court turns to Shriners' motion to dismiss. Shriners moves to dismiss Bond's complaint on the ground that her claims are time-barred by the applicable one-year statute of limitations set forth at O.R.S. § 659A.875. (Def.'s Mot. at 3.) Bond responds that Oregon House Bill 4212, which extended the filing deadlines for certain legal matters during a declared state of emergency due to COVID-19, tolled the statute of limitations for her claims.[6] (Pl.'s Resp. at 1-2.) For the reasons explained below, the Court recommends that the district judge grant Shriners' motion to dismiss.

### A.    Statute of Limitations

O.R.S. § 659A.875(1) provides that "a civil action alleging an unlawful employment practice . . . must be commenced within one year after the occurrence of the unlawful employment practice unless a complaint has been timely filed under ORS 659A.820[.]"[7] Here, the latest incident of alleged discrimination and retaliation occurred on June 12, 2019, the date on which Shriners terminated Bond's employment. (FAC ¶ 28.) Bond filed her complaint in state court on October 1, 2020, more than one year later. Accordingly, the parties do not dispute that, absent application of House Bill 4212, Bond's claims are time-barred.

---

[6] The Court takes judicial notice of House Bill 4212 (Pl.'s Resp. Ex. A) and Governor Kate Brown's ("Governor Brown") Executive Orders (Pl.'s Resp. Exs. B, C, and D). *See Rueda Vidal v. Bolton*, 822 F. App'x 643, 644 (9th Cir. 2020) ("On a motion to dismiss, a court may take judicial notice of 'documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint.'" (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

[7] O.R.S. § 659A.875 was amended by the Oregon Workplace Fairness Act, Senate Bill 726, which extended the statute of limitations for claims arising under O.R.S. § 659A.030. *See* S.B. 726, § 6(b), 80th Leg., Reg. Sess. (Or. 2019) ("A civil action . . . alleging a violation of ORS 659A.030 . . . must be commenced not later than five years after the occurrence of the alleged violation[.]"). However, the amendment applies only to "conduct prohibited by O.R.S. 659A.030 . . . occurring on or after the effective date of this 2019 Act [September 29, 2019]." *Id.* § 10.

**B.      House Bill 4212**

On March 8, 2020, Governor Brown signed Executive Order 20-03, which declared a

state of emergency due to the threat that the COVID-19 coronavirus posed to public health and

safety. (Pl.'s Resp. Ex. B.) On May 1, 2020, Governor Brown issued Executive Order 20-24,

extending the state of emergency through July 6, 2020. (*Id.* Ex. C.) On June 30, 2020, Governor

Brown signed Executive Order 20-30, which extended the state of emergency through September

4, 2020. (Exec. Order No. 20-30.)

In response to the COVID-19 pandemic and the emergency declarations issued by

Governor Brown, the Oregon Legislative Assembly enacted House Bill 4212, which became

effective on June 30, 2020. H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020). As relevant here,

House Bill 4212 extended the filing deadlines for certain legal matters during the declared state

of emergency. Specifically, Section 7(1) of House Bill 4212 provides that if the time to

commence an action expires during the state of emergency, the time is extended to ninety days

after the state of emergency ends:

> If the expiration of the time to commence an action or give notice of a claim falls
> within the time in which any declaration of a state of emergency issued by the
> Governor related to COVID-19, and any extension of that declaration, is in effect,
> or within 90 days after the declaration is no longer in effect, the expiration of the
> time to commence the action or give notice of the claim is extended to a date 90
> days after the declaration and any extension is no longer in effect.

H.B. 4212 § 7(1). The current state of emergency has been extended "through May 2, 2021,

unless extended or terminated earlier by the Governor." (Exec. Order No. 21-05.) To date,

Governor Brown has extended the COVID-19 state of emergency six times. *Id.*

The legislation also expressly authorized the Chief Justice of the Oregon Supreme Court

to extend or suspend certain time periods during the COVID-19 state of emergency. Section

6(1)(b) provides that, upon a finding of good cause, the Chief Justice may extend or suspend the

listed time periods even if the time period had already passed:

> The Chief Justice may extend or suspend a time period or time requirement under this subjection notwithstanding the fact that the date of the time period or time requirement has already passed as of the effective date of this 2020 special session Act.

H.B. 4212 § 6(1)(b). However, importantly, the Chief Justice's statutory authority to revive

an expired time period applies only under the following circumstances:

> (A)    Applies in any case, action or proceeding *after* the case, action or proceeding is initiated in any circuit court, the Oregon Tax Court, the Court of Appeals or the Supreme Court;
>
> (B)    Applies to the initiation of an appeal to the magistrate division of the Oregon Tax Court or an appeal from the magistrate division to the regular division;
>
> (C)    Applies to the initiation of an appeal or judicial review proceeding in the Court of Appeals; or
>
> (D)    Applies to the initiation of any type of case or proceeding in the Supreme Court.

*Id.* § 6(1)(a)(A)-(D) (emphasis added). Notably, the Legislature did not include time periods to

commence cases, actions, or proceedings in the list of time periods that the Chief Justice may

revive if the time period had already passed as of the effective date of House Bill 4212. To date,

the Chief Justice has issued two orders extending statutory time periods pursuant to her authority

under Section 6(1)(b), neither of which are relevant to the Court's analysis here. (*See* Bryan

Decl. Ex. 2.)

### C.    Analysis

Shriners argues that House Bill 4212 does not revive the statute of limitations for civil

actions that were not timely commenced before June 30, 2020 (i.e., the effective date of House

Bill 4212), and therefore Bond's claims are time-barred because the applicable statute of

limitations had already expired by June 30, 2020. (Def.'s Mot. at 4-8.) Bond responds that House

Bill 4212 extended the relevant statute of limitations to ninety days after the COVID-19 state of

emergency ends, and therefore she timely filed her claims. (Pl.'s Resp. at 7.)

Under Oregon law, the Legislature "may choose to revive actions that previously became

extinguished under the statute's old time limitation." *Owens v. Maass*, 323 Or. 430, 439 (1996).

"In order to revive such actions, the legislature must express its intent to do so in the text of the

new enactment." *Id.*; *see also Denny v. Bean*, 51 Or. 180, 186 (1908) ("When a remedy has been

once barred by statute, a later enactment establishing a longer period of time in which the

remedy may be enjoyed, will not be given a retroactive construction to revive the lost remedy,

unless that intention is affirmatively expressed in the act.") In other words, "despite the fact that

an action already may have become time-barred, it may be revived and subjected to a new,

extended time limitation if the legislature expresses such an intent in the new enactment. Without

an *express* authorization to *revive* actions previously time-barred, the ability to exercise such a

statutory right *no longer exists.*" *Owens*, 323 Or. at 439-40 (emphasis in original).

However, the Legislature is not required to use "magic words of revival" to indicate its

intent to revive otherwise time-barred claims. *Doe v. Silverman*, 287 Or. App. 247, 253 (2017)

("Ultimately, we reject defendant's assertion that the legislature was required to use some sort of

magic words of revival for the [] amendment to apply retroactively to otherwise time-barred

claims. Our task in construing statutes is solely to determine what the legislature intended. . . .

We will not presume to negate that expressed intention by applying an archaic notion that magic

words of revival had to be used here—a notion that has no basis in our modern jurisprudence on

statutory construction."); *see also Vill. at Main St. Phase II, LLC v. Dep't of Revenue*, 356 Or.

164, 183 n.4 (2014) (en banc) ("[T]axpayers contend that there is a presumption that statutes

apply prospectively. That is not an accurate statement of current law. As more recent cases make clear, the controlling question is one of legislative intent, determined not by the invocation of presumptions but by the usual rules of statutory construction."); *Delehant v. Bd. on Police Standards & Training*, 317 Or. 273, 278 (1993) ("Retroactive application of a rule is not automatically impermissible, however. The question is one of intent[.]").

To interpret House Bill 4212, the Court's task is to discern the intent of the Legislature by applying Oregon's statutory interpretation principles. *See Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (a federal court interpreting Oregon law should "interpret the law as would the [Oregon] Supreme Court"); *see also Vill. at Main St.*, 356 Or. at 183 ("Whether a statute applies retroactively is a question of legislative intent, determined by the usual tools of statutory construction.").

Under Oregon law, the "first step" of statutory interpretation is an examination of the text and context of the statute. *Portland Gen. Elec. Co. v. Bureau of Lab. & Indus.*, 317 Or. 606, 610 (1993), *superseded by statute*, O.R.S. § 174.020; *see also State v Gaines,* 346 Or. 160, 171 (2009) (en banc) (noting that, despite the amendments to O.R.S. § 174.020, "[t]he first step remains an examination of text and context"). Next, "courts may consider the legislative history of a statute, regardless of whether the statute is ambiguous, if the legislative history is useful to the court's analysis." *Humbert v. Liberty Mut. Fire. Ins. Co.*, No. 3:19-cv-01740-SB, 2020 WL 5099556, at *3 (D. Or. Aug. 5, 2020) (citing *Gessele v. Jack in the Box, Inc.*, 427 F. Supp. 3d 1276, 1299 (D. Or. 2019) (applying the Oregon Supreme Court's methodology for interpreting a statute: (1) "'examination of text and context[;]'" (2) "'consideration of pertinent legislative history that a party may proffer . . . [which] the court will consult . . . after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that

legislative history appears useful to the court's analysis'" and (3) "'[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty.'" (quoting *Gaines*, 346 Or. at 171-72)).

The Court begins with the text and context of House Bill 4212. For convenience, the Court repeats it here:

> If the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of that declaration, is in effect, or within 90 days after the declaration is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect.

H.B. 4212 § 7(1). There is nothing in the statutory text to suggest that the extension provided by Section 7(1) applies retroactively to already time-barred claims. *See Owens*, 323 Or. at 439-40 ("In order to revive such actions, the legislature must express its intent to do so in the text of the new enactment."); *Denny*, 51 Or. at 186 ("When a remedy has been once barred by statute, a later enactment establishing a longer period of time in which the remedy may be enjoyed, will not be given a retroactive construction to revive the lost remedy, unless that intention is affirmatively expressed in the act.").

The context of Section 7 further supports the conclusion that the statute did not revive Bond's claims. Another section of the bill, Section 6(1)(b), granted the Chief Justice of the Oregon Supreme Court the authority to revive time periods that had already expired as of the effective date of House Bill 4212, but limited that authority to specific matters, including cases that had already been filed in circuit court. H.B. 4212 § 6(1)(b). In contrast, the plain text of Section 7, applicable here because it applies to extend time periods "to commence an action,"

PAGE 17 – FINDINGS AND RECOMMENDATION

does not provide an option to revive a time period that had already passed as of June 30, 2020.[8]

*See Owens*, 323 Or. at 437 ("[W]hen the legislature incorporates words of retroactivity in one

provision of a statute and omits similar words from another provision, that omission may support

a conclusion that the legislature either did not intend the latter provision to apply retroactively or,

at least, did not consider that issue." (citing *Boone v. Wright*, 314 Or. 135, 138 (Or. 1992) (en

banc)).

    Additionally, nothing in House Bill 4212's legislative history suggests that the

Legislature intended to apply Section 7 retroactively to revive statutes of limitation that had

already expired. *See Humbert*, 2020 WL 5099556, at *3 ("Courts may consider the legislative

history of a statute, regardless of whether the statute is ambiguous, if the legislative history is

useful to the court's analysis."). Indeed, Bond acknowledges that the Legislature did not mention

Section 7 in its discussions of the bill. (*See* Pl.'s Resp. at 10, "The legislative history of HB 4212

demonstrates that the bill was discussed publicly on the floor for a little over an hour. During that

open floor debate there was no discussion about § 7.")

    Finally, Bond argues that the *Erie* doctrine requires the Court to follow a state court

judge's recent decision finding that House Bill 4212 suspended statutes of limitations beginning

on March 8, 2020. (Pl.'s Resp. at 4-6, citing Ex. E, Order on Def.'s ORCP 21 Mot. & Mot.

Summ. J., *Martus v. Foster, et al.*, No. 20CV12957 (Sept. 22, 2020)). The Court disagrees.

While federal courts sitting in diversity apply substantive state law, *Erie R.R. Co. v. Tompkins*,

---

    [8] Bond argues that Section 6 of House Bill 4212 is "not applicable" to the Court's
statutory analysis interpreting Section 7. (Pl.'s Resp. at 10-11.) The Court disagrees. "Relevant
context includes other provisions of the same statute and other related statutes." *Gessele*, 427 F.
Supp. 3d at 1299 (quoting *Matter of Comp. of Gadalean*, 364 Or. 707, 719 (2019)); *see also
Weldon v. Bd. of Lic. Pro. Couns. & Therapist*s, 353 Or. 85, 95 (2012) ("The context of a statute
includes all provisions contained in the session law, including parts of the session law not
codified as part of the statute being interpreted.").

304 U.S. 64, 80 (1938), *Erie* applies only to state law declared by "the legislature or its highest court." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 112 (1945). In any event, the parties in the *Martus* case did not brief the statutory interpretation issues discussed herein, the circuit court did not consider *Owens v. Maass* which controls here, and the court's analysis of House Bill 4212 was dicta. For those reasons, the Court declines to follow that opinion here. *Cf. Stellar J. Corp. v. Smith & Loveless, Inc.*, 580 F. App'x 604, 607 (9th Cir. 2014) ("This Court is 'not bound by dicta of state appellate courts.'") (quoting *Minn. Mut. Life Ins. v. Ensley*, 174 F.3d 977, 983 (9th Cir. 1999)).

The Legislature could have revived statutes of limitation that expired between March 8, 2020 and June 30, 2020, or provided the Chief Justice with revival authority, but for reasons not apparent in the legislative record, it did not do so. *See Boone*, 314 Or. at 142 ("The legislature could easily have provided a third date from which to calculate the 120-day period, such as the effective date of the amendment for convictions and appeals that became final before the effective date. The Legislature did not do so, however. For us now to read in a third date would disregard the legislatively mandated rule of construction that courts ascertain only what is contained in a statute and refrain from inserting what is not."). Even if it makes good policy sense to revive statutes of limitation that expired during this short "donut hole" not addressed by the legislation, it is not the Court's role to rewrite the statute.

Having considered the text, context, and legislative history of House Bill 4212, the Court concludes that Section 7 did not revive the statute of limitations for civil actions that had already

expired prior to June 30, 2020. Accordingly, the Court finds that Bond's claims are time-barred and recommends that the district judge grant Shriners' motion to dismiss.[9]

## III.    LEAVE TO AMEND

In the alternative to her motion to remand, Bond seeks leave to amend her complaint to add Bernstein as a defendant. (*See* Pl.'s Mot. to Remand at 2.) In light of the Court's conclusion that Bond's claims are time-barred, the Court recommends that the district judge deny Bond's motion for leave to amend her complaint. *See Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal. Jan. 15, 2015) (denying motion to amend the complaint because "it appears that [the plaintiff's] claim against [the defendant]—even if well pled—would be time-barred").

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY Bond's motions to remand and to amend (ECF No. 6), GRANT Shriners' motion to dismiss (ECF No. 4), and dismiss this case without prejudice.

///

///

///

///

///

///

---

[9] The Court recommends that the district judge dismiss Bond's claims without prejudice, as it is conceivable that the Legislature could amend the law to toll statutes of limitation that expired in the early days of the COVID-19 state of emergency, and the state of emergency continues.

PAGE 20 – FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of March, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge